# IN THE UNITED STATE DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. JESICA SANDERS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) Case No. 18-cv-00574-CVE-FHM | |
| | ) Attorney Lien Claimed | |
| 1. SHADOW MOUNTAIN BEHAVIORAL HEALTH SYSTEM, LLC | ) Jury Trial Demanded | |
| 2. UNIVERSAL HEALTH SERVICES, INC., | ) | |
| 3. UHS OF DELAWARE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Jesica Sanders submits this Complaint against Defendants Shadow Mountain Behavioral Health System LLC, Universal Health Services, Inc., and UHS of Delaware, Inc. (collectively the "Defendants").

## PARTIES, JURISDICTION, AND VENUE

1. This action arises under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e *et seq.* and Oklahoma law.

2. Plaintiff is, and was at all times relevant to this action, a resident of Tulsa, Tulsa County, Oklahoma.

3. Defendant Shadow Mountain Behavioral Health System is a foreign limited liability company authorized to do business in the State of Oklahoma.

4. Defendant UHS of Delaware, Inc. is a foreign for-profit corporation authorized to do business in the State of Oklahoma.

5. Defendant Universal Health Services, Inc. is a foreign for-profit corporation authorized to do business in the State of Oklahoma.

1

6. Upon information and belief, Shadow Mountain Behavioral Health System is a wholly owned subsidiary of, and under the control of, Defendants Universal Health Services, Inc. and UHS of Delaware, Inc.

7. Upon information and belief, during the time Plaintiff was employed by Defendants, Mike Kistler was the Chief Executive Officer of Shadow Mountain Behavioral Health System and an employee of, and paid by, Universal Health Services, Inc. and/or UHS of Delaware, Inc. under the control and direction of Universal Health Services and/or UHS of Delaware, Inc.'s Regional Vice President, Sharon Worsham.

8. Upon information and belief, during the time Plaintiff was employed by Defendants, Paul Ervin was the Chief Financial Officer of Shadow Mountain Behavioral Health System and and employee of, and paid by, Universal Health Services, Inc. and/or UHS of Delaware, Inc. under the control and direction of Universal Health Services and/or UHS of Delaware, Inc.'s Regional Vice President, Sharon Worsham.

9. Shadow Mountain Hospital and Behavioral Health Assessment Center is a facility owned and operated by Defendants and is known as Defendants' "Sheridan Campus."

10. At all times relevant to this cause of action, Plaintiff was employed by Defendants to work at the Sheridan Campus.

11. Defendants terminated Plaintiff's employment on April 14, 2017.

12. Plaintiff has exhausted her statutorily required administrative remedies by submitting a Form 5 Charge of Discrimination against all Defendants on February 7, 2018 via facsimile, e-mail, and overnight mail. More specifically, Plaintiff submitted a verified Intake Questionnaire with addenda to the EEOC for her claims against Defendants Shadow Mountain Behavioral Health System and Universal Health Services on August 2,

2017. Plaintiff submitted a verified Intake Questionnaire with addenda to the EEOC for her claims against Defendant UHS of Delaware, Inc. on January 16, 2018. The information provided to the EEOC in her verified Intake Questionnaires was sufficiently detailed to constitute a Charge of Discrimination pursuant to 29 CFR § 1601.12 and *Federal Express Corp. v. Holowecki*, 522 U.S. 389 (2008).

13. On August 29, 2018, the EEOC issued Plaintiff a Notice of Suit Rights against all Defendants.

## OPERATIVE FACTS

14. Plaintiff incorporates her allegations in Paragraphs 1-12, above, as if set forth fully herein.

15. Plaintiff was hired on or about February 28, 2014 by Defendants as a Mental Health Technician to work at Defendants' Sheridan Campus in Tulsa, Oklahoma, and was then promoted to House Supervisor at the Sheridan Campus. Plaintiff also worked in the Utilization Review department from approximately February 2016 to October 2016.

16. On December 7, 2016, American media company BuzzFeed published an exposé of a yearlong investigation of Defendant Universal Health Services, Inc. and its subsidiary hospitals, describing company-wide admission, retention, and billing practices that led to federal investigations into company policies and whether the company was committing Medicare fraud. The exposé also described investigations into wider issues affecting the company, including reports suggesting a pattern of quality care issues, staffing issues, and staff training issues.

17. At all relevant times herein, Defendant Michael Kistler neither received any training in the proper use or application of physical restraints on Shadow Mountain patients nor

possessed any certifications evidencing any such training even though Oklahoma Administrative Code section 317-30-5-95.39 requires staff to be trained in such techniques. Yet, Kistler physically restrained patients.

18. Upon information and belief, Michael Kistler lacked the training and certification under Oklahoma regulations to perform restraints on Shadow Mountain patients.

19. At all relevant times herein, Shadow Mountain had a pattern and practice of understaffing its facilities and programs with less than the required number of staffers per patients during waking and sleep hours pursuant to Oklahoma Administrative Code section 317-30-5-95.24.

20. At all relevant times herein, Shadow Mountain had a pattern, practice, and policy of admitting and holding patients without regard for the patient's actual need for treatment in order to exhaust patients' Medicare, Medicaid, SoonerCare, and/or insurance benefits, subjecting Defendants to criminal liability under Oklahoma criminal statutes, including but not limited to Okla. Stat. tit., section 1589, and liability under the False Claims Acts.

21. At all relevant times herein, Defendants each had knowledge of widespread and systemic instances of patient abuse and neglect on Shadow Mountain's premises.

22. On April 11, 2017, BuzzFeed published an article disclosing Shadow Mountain's violations of various state regulations for inadequate staffing and staff training, Shadow Mountain's dangerous staff practices, Shadow Mountain's illegal admissions, retention, and billing practices, and allegations of Shadow Mountain's abuse and neglect of its patients.

23. At all relevant times, Defendants, individually and as employees of Shadow Mountain and/or Universal Health Services, Inc. and/or UHS of Delaware, Inc., possessed

knowledge of the institutional neglect and abuse of Shadow Mountain's patients, Shadow Mountain's violations of state regulations described herein, Shadow Mountain's dangerous staff practices described herein, and Shadow Mountain's billing, admission, and retention practices described herein.

24. At all relevant times, Defendants, individually and as employees of Shadow Mountain and/or Universal Health Services, Inc. and/or UHS of Delaware, Inc. owed a statutory duty to report the known abuse and neglect occurring at Shadow Mountain's Hospital and Assessment Center under, inter alia, 10A O.S. § 1-2-101, and each faced criminal liability for their hiding of, or failure to report, such abuse and neglect.

25. On April 13, 2017, for fear of their own individual and collective liability, Defendants accused Plaintiff of, and terminated Plaintiff for, whistleblowing and providing information to investigatory agencies and authorities regarding, inter alia, Shadow Mountain's violations of state regulations concerning the application of physical restraints by individuals not trained and certified to conduct such restraints described herein, Shadow Mountain's use of staff not trained in the application of physical restraint of patients described herein, Shadow Mountain's violations of state regulations concerning Shadow Mountain staffing its facilities with less than the required amount of staff per patient described herein, Shadow Mountain's dangerous staff practices, Shadow Mountain's admissions, retention, and billing practices for pecuniary gain described herein that constitute forgery under Oklahoma's Criminal Code and Medicare/Medicaid Fraud under the False Claims Act, and Shadow Mountain's abuse and neglect of its patients.

26. Plaintiff's April 14, 2017 termination was the result of Defendants, individually and as employees of Shadow Mountain and/or Universal Health Services, Inc. and/or UHS of Delaware, Inc., willfully and intentionally interfering with reporting of the abuse and neglect suffered by Shadow Mountain's patients to the appropriate investigatory agency and accusing Plaintiff of such protected activity.

27. Plaintiff's April 14, 2017 termination was the result of Defendants, individually and as employees of Shadow Mountain and/or Universal Health Services and/or UHS of Delaware. Inc.'s, intentionally and willfully interfering with reporting to the appropriate investigative authority of Defendants' failure, as individuals and as employees of Shadow Mountain and/or Universal Health Services and/or UHS of Delaware, Inc., to promptly report suspected and known child abuse and neglect at Shadow Mountain and accusing Plaintiff of such protected activity.

28. No statutory remedy exists to protect employees who are terminated for reporting violations of Oklahoma's criminal code (including Okla. Stat. tit. 21, § 1589) or the Oklahoma Administrative Code (including Okla. Admin. Code §§ 317-30-5-95.24 and 317-30-5-95.39) affecting the public.

29. During Plaintiff's employment, Michael Kistler began targeting Plaintiff and sexually harassing her, which included physically touching Plaintiff's arms without permission.

30. In addition to physically touching Plaintiff without permission, Kistler regularly stood behind Plaintiff and stared at her breasts and buttocks. Kistler would also touch and smell Plaintiff's hair in front of other employees.

31. Kistler also regularly paced in front of Plaintiff's office door when other male employees were inside Plaintiff's office, making both Plaintiff and the male employees

6

feel uncomfortable and causing Plaintiff's conversation with the male employees to be cut short. Additionally, Kistler would let himself into Plaintiff's locked office and wait for Plaintiff to return.

32. Kistler's sexual advances and shows of power and control over Plaintiff resulted in Plaintiff being the target of rumors by co-employees that she was in an improper sexual relationship with Kistler. As Plaintiff was promoted within the organization, Plaintiff's promotions were met with rumors that the promotions were the result of the alleged improper relationship with Kistler and unrelated to Plaintiff's professional abilities.

33. Moreover, on numerous occasions, Kistler belittled Plaintiff's value as an employee and instructed Plaintiff to flirt with male doctors at the Sheridan Campus to obtain orders from those doctors consistent with Kistler's wishes for patients to remain at the Sheridan Campus for the duration of their available insurance coverage.

34. Kistler's conduct was not limited to Plaintiff. Kistler would regularly throw wads of paper down the front of the shirt of a female nurse in front of people.

35. On one occasion, Plaintiff's supervisor insisted Plaintiff put on a patient's bra over her clothing and show Kistler. Kistler also had sexual relationships with subordinates, adding sexual intimidation to the work environment.

36. Additionally, female employees, including Plaintiff, were targeted for ridicule and harassment by Chief Financial Officer Paul Ervin.

37. Ervin regularly targeted female employees for public derision and abuse in front of other employees. Ervin never publicly derided male employees.

38. On numerous occasions, Ervin targeted Plaintiff for public ridicule for what he believed was "overstaffing" the Sheridan Campus. Several weeks before Plaintiff's employment

was terminated, Plaintiff reported Ervin's conduct to Chief Operating Officer Chris Frisillo.

39. Kistler's harassment grew as Kistler, Shadow Mountain, UHS of Delaware, and Universal Health Services, and their employees and officers, began to fear the repercussions of their individual and collective liability for their negligent, willful, and intentional failure to disclose their known unlawful business practices and abuse and neglect of their wards.

40. Kistler told Plaintiff he believed Plaintiff was leaking information for the lawsuit against, and investigation into, Shadow Mountain, UHS of Delaware, and Universal Health Services, and their related companies and employees.

41. Kistler interpreted Plaintiff's conduct as a betrayal and rebuke of the romantic relationship Kistler believed he had with Plaintiff.

42. As a result of Defendants' wrongful actions, Plaintiff suffered mental and emotional distress, loss of dignity, and pecuniary losses.

## SEX/GENDER DISCRIMINATION

43. Plaintiff incorporates hereunder by reference her allegations in Paragraphs 1-42, above, as if set forth fully herein.

44. Plaintiff is protected under state and federal law from employment discrimination because of her sex and gender.

45. Plaintiff's sex/gender was a motivating factor for Defendants' adverse treatment of Plaintiff, including being subjected to a hostile work environment, being discharged, and being retaliated against.

## RETALIATION

46. Plaintiff incorporates hereunder by reference her allegations in Paragraphs 1-45, above, as if set forth fully herein.

47. Defendants discharged Plaintiff for reporting Ervin's conduct and for engaging in protected activity described herein.

## WHISTLEBLOWER CLAIMS

48. Plaintiff incorporates hereunder by reference her allegations in Paragraphs 1-47, above, as if set forth fully herein.

49. Defendants discharged Plaintiff for engaging in protected activity described herein.

## DAMAGES

50. Plaintiff incorporates hereunder by reference her allegations in Paragraphs 1-49, above, as if set forth fully herein.

51. Defendants' actions were intentional, willful, wanton, and done with a reckless indifference to Plaintiff's rights.

52. As a result of Defendants' negligent, intentional, willful, wanton, and reckless conduct, Plaintiff suffered damages in the form of lost wages and benefits, lost future wages, loss of dignity, anxiety, mental and emotional distress, humiliation, worry, loss of enjoyment of life, and other pecuniary losses.

**WHEREFORE,** Plaintiff requests the Court enter judgment against all Defendants and award Plaintiff damages in excess of $75,000 for: lost wages and benefits; future wages and benefits; all compensatory and consequential damages, including but not limited to loss of

dignity, mental and emotional distress, humiliation, anxiety, worry, and loss of enjoyment of life; punitive damages; pre- and post-judgment interest; attorneys' fees; and all other relief the Court deems just and equitable.

Respectfully submitted,

/s/Alexander J. Sisemore
Paula J. Quillin, OBA #7368
Jeremy K. Ward, OBA #21400
Alexander J. Sisemore, OBA #31225
Franden | Farris | Quillin | Goodnight + Roberts
2 W. 2nd St., Suite 900
Tulsa, OK 74103
918-583-7129 Phone
918-583-3814 Facsimile
***Attorneys for Plaintiff***