UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JESICA SANDERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-CV-0574-CVE-FHM |
| ) | |
| SHADOW MOUNTAIN BEHAVIORAL ) | |
| HEALTH SYSTEM, LLC, ) | |
| UNIVERSAL HEALTH SERVICES, INC., ) | |
| AND UHS OF DELAWARE, INC., ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

Now before the Court are the motions to compel arbitration, and to dismiss or stay plaintiff's claims (Dkt. ## 11, 12),[1] filed by defendants Shadow Mountain Behavioral Health System, LLC, Universal Health Services, Inc., and UHS of Delaware, Inc.[2] Plaintiff Jesica Sanders filed a response to defendants' motion (Dkt. # 16), and defendants filed a reply (Dkt. # 20).

### I.

On or about February 28, 2014, defendants hired plaintiff to work as a mental health technician at Shadow Mountain. Dkt. ## 11, 12, at 2. On February 28, 2014, plaintiff and Shadow Mountain entered into an arbitration agreement. Id. at 8-13. The agreement states that it

> applies to any dispute arising out of or related to Employee's employment with Shadow Mountain Behavioral Health Systems or one of its affiliates, subsidiaries or parent companies ("Company") or

---

[1] Defendants filed a two-part motion as one document, which was redocketed by the Clerk's Officer as two docket numbers (11, 12).

[2] Plaintiff alleges that Shadow Mountain is a wholly owned subsidiary of, and under the control of, Universal Health Services and UHS of Delaware. Dkt. # 2, at 2, ¶ 6.

> termination of employment and survives after the employment relationship ends. . . . [T]his Agreement is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration . . . . Such disputes include without limitation disputes arising out of or relating to interpretation or application of this Agreement. . . . [T]his Agreement also applies, without limitation, to disputes regarding . . . harassment and claims arising under the Civil Rights Act of 1964, . . . and all other state statutory and common law claims.

Id. at 8. The agreement "requires all such disputes to be resolved only by an arbitrator through final and binding arbitration and not by way of court or jury trial." Id. In order to start the arbitration, the agreement requires the party bringing the claim to "demand arbitration in writing and deliver the written demand by hand or first class mail to the other party within the applicable statute of limitations period." Id. at 9.

The agreement expressly states, however, that "[a]rbitration is not a mandatory condition of Employee's employment at the Company," and it provides a procedure for the employee to opt out of the arbitration agreement. Id. at 11 (emphasis omitted). Specifically, the agreement states that in order to opt out of and not be subject to the arbitration agreement, the employee must sign and date an opt-out form and submit it to the human resources department within 30 days of the employee's receipt of the arbitration agreement. Id. "An employee who timely opts out as provided . . . will not be subject to any adverse employment action as a consequence of that decision and may pursue available legal remedies without regard to [the] Agreement." Id. The agreement explains, however, that "[s]hould an Employee not opt out of [the] Agreement within 30 days of the Employee's receipt of [the] Agreement, continuing the Employee's employment constitutes mutual acceptance of the terms of [the] Agreement by Employee and the Company." Id. Finally, the

2

agreement states that the employee has the right to consult counsel of her choice regarding this decision. Id.

Plaintiff signed the arbitration agreement on February 28, 2014. Id. at 12. Also on February 28, 2014, plaintiff signed an acknowledgment form, in which she acknowledged the following:

> [The agreement] is a contract where you and Shadow Mountain Behavioral Health System agree to resolve any formal disputes through arbitration instead of litigation. . . . I acknowledge that I received a copy of [the agreement] and Opt-Out Form. . . . I understand that Arbitration is not a mandatory condition of employment. I understand that I may opt [out] of the [agreement] by submitting a completed Opt-Out Form by fax or mail to the Human Resources Department within thirty days of the date below. I understand that if I opt out of the [agreement], I will not be subject to any adverse employment action as a consequence of that decision and may pursue any available legal remedies. . . . **I FURTHER UNDERSTAND THAT IF I DO NOT OPT OUT OF THE [AGREEMENT] WITHIN THIRTY DAYS OF THE DATE INDICATED BELOW, I WILL BE BOUND BY THE ARC AGREEMENT.**

Id. at 13 (emphasis in original). Defendants filed an affidavit, as corrected, of Jennifer Bentley, Shadow Mountain's human resources director, stating that plaintiff never exercised her right to opt out of the arbitration agreement. Id. at 14; Dkt. # 13.

Plaintiff's employment was terminated on April 14, 2017. Dkt. ## 11, 12, at 2. On May 26, 2017, plaintiff issued a demand to defendants for compensation, in which she "affirmatively represented her intention to pursue recovery by initiating a civil lawsuit" if defendants did not timely accept her demand. Dkt. # 16, at 2. Defendants responded to plaintiff's demand on June 9, 2017, requesting plaintiff submit her claims to arbitration pursuant to the arbitration agreement. Id. Plaintiff states that she "rejected Defendants [sic] request and opted to pursue her claims in district court as outlined in her demand." Id. After completing the administrative requirements, plaintiff

filed a complaint (Dkt. # 2) in this Court on November 8, 2018, alleging sex/gender discrimination, retaliation, and whistleblower claims arising under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, et seq. and Oklahoma state law. On December 17, 2018, defendants filed their motions to compel arbitration and to dismiss or stay plaintiff's claims (Dkt. ## 11, 12). Defendants argue that the Court should compel arbitration in this matter, because plaintiff unequivocally agreed to voluntary arbitration of all claims alleged in the lawsuit. Id. at 4.

## II.

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., represents a liberal public policy in favor of arbitration, and states that a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2; Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662 (2010); Vaden v. Discover Bank, 556 U.S. 49, 58 (2009). Plaintiff argues that the arbitration agreement provides no means by which defendants have a right to demand arbitration. Such an argument is of no consequence, however, because, as plaintiff subsequently notes, the FAA, which applies to the agreement at issue in this case,[3] allows "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Thus, this Court

---

[3] Neither party disputes that the arbitration agreement is within the coverage of the FAA. In any case, the Court independently finds that the contract does not fall within § 1's exemption from the FAA of contracts of employment of transportation workers, because plaintiff is not a transportation worker. Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 121, (2001); see also New Prime Inc. v. Oliveira, No. 17-340, 2019 WL 189342 (Jan. 15, 2019) (holding that a court should decide for itself whether the FAA's exclusion for contracts of employment of certain transportation workers applies before ordering arbitration).

will consider defendants' motions to compel arbitration of the dispute, and to stay or dismiss plaintiff's claims.

A motion to compel arbitration calls for a two-step inquiry concerning the arbitrability of the dispute: (1) whether there is a valid arbitration agreement, and (2) whether the particular dispute falls within the scope of that agreement. AT & T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 649 (1986). The "'question of arbitrability' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002) (quoting AT & T, 475 U.S. at 649) (alteration in original) (emphasis omitted). Here, defendants assert, and plaintiff does not dispute, that the question of arbitrability is to be determined by this Court. Moreover, the Court independently finds that there is no clear and unmistakable evidence that the parties intended to arbitrate arbitrability.[4] Accordingly, the validity and enforceability of the arbitration agreement is for this Court to decide.

In resolving these issues of arbitrability, the Court must operate under a presumption in favor of arbitration. As an initial matter, there is no real dispute that there is a valid arbitration agreement between plaintiff and Shadow Mountain. Plaintiff concedes that she executed the agreement (as evidenced by her signature on the last page of the agreement, as well as on the acknowledgment form). Dkt. # 16, at 1. Further, plaintiff does not dispute that, despite having the option to opt out of the arbitration agreement within 30 days of receiving the agreement, plaintiff chose not to opt out.

---

[4] Although the parties have agreed to arbitrate disputes "arising out of or relating to interpretation or application of th[e] Agreement," there is no hint in the agreement that the parties expressed a specific intent to submit to an arbitrator questions concerning the validity and enforceability of the agreement. In such an instance, a court should have "no hesitation in concluding" that there is no clear and unmistakable evidence that the parties intended to arbitrate arbitrability. Riley Mfg. Co., Inc. v. Anchor Glass Container Corp., 157 F.3d 775, 780 (10th Cir. 1998).

Moreover, plaintiff seems to admit that a valid arbitration agreement exists by virtue of her argument that she chose to pursue recovery in district court rather than pursue her right to demand arbitration for her claims. Id. at 3-4.

In addition, there is no real dispute that plaintiff's claims fall within the scope of the arbitration agreement. The arbitration agreement clearly states that it applies "to disputes regarding the employment relationship, . . . termination, or harassment and claims arising under the Civil Rights Act of 1964, . . . and state statutes, if any, addressing the same or similar subject matters, and all other state statutory and common law claims." Dkt. ## 11, 12, at 8. Here, plaintiff brings claims for employment discrimination based on sex and gender; retaliation based on her termination; and whistleblower claims based on her termination. Dkt. # 2, at 8-9. Thus, all of plaintiff's claims arise from and relate to her employment relationship with and termination from Shadow Mountain. Moreover, plaintiff states that her "action arises under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e et seq." Id. at 1. Accordingly, the Court finds that a valid arbitration agreement exists between plaintiff and Shadow Mountain, and that all of plaintiff's claims fall within the scope of that agreement.

Plaintiff argues, however, that defendants' demand for arbitration is untimely and, thus, barred by equitable estoppel and laches. Specifically, plaintiff argues that, in her May 26, 2017 demand for compensation, she indicated her intention to pursue recovery in district court, and that, since that time, she has continued to take steps representing that, "rather than pursue her right to demand arbitration for her claims, she was electing to proceed to district court for her claims." Dkt. # 16, at 3. Plaintiff argues, however, that defendants did not move to compel arbitration until

November 20, 2018.[5] Plaintiff's argument is, in effect, an argument that defendants have waived the right to compel arbitration as a result of delay.[6]

Where, as here, "a contract mandates arbitration, courts generally will enforce the arbitration clause absent a waiver." Peterson v. Shearson/Am. Express, Inc., 849 F.2d 464, 465-66 (10th Cir. 1988). In Peterson, the Tenth Circuit summarized several factors that courts may use to determine whether a party waived its right to demand arbitration:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.

Id. at 467-68 (quoting Reid Burton Constr., Inc. v. Carpenters Dist. Counsel of So. Colo., 614 F.2d 698, 702 (10th Cir. 1980)) (brackets in original). Here, plaintiff does not allege that defendants took

---

[5] The Court notes that defendants actually moved to compel arbitration on December 17, 2018, not on November 20, 2018. Dkt. ## 11, 12.

[6] The Court notes that, in Howsam, the Supreme Court stated that "the presumption is that the arbitrator should decide allegations of waiver, delay, or a like defense to arbitrability." Howsam, 537 U.S. at 84 (internal quotations and alternations omitted). Howsam is distinguishable, however, because the Court was interpreting the National Association Securities Dealers's rule regarding time limits. Moreover, the Tenth Circuit has repeatedly considered whether a party has waived its right to demand arbitration. See BOSC, Inc. v. Bd. of Cty. Commissioners of Cty. Of Bernalillo, 853 F.3d 1165, 1170-71 (10th Cir. 2017); In re Cox Enterprises, Inc. Set-Top Cable Television Box Antitrust Litigation, 835 F.3d 1195 (10th Cir. 2016); Hill v. Ricoh Americas Corp., 603 F.3d 766, 772-775 (10th Cir. 2010); Peterson, 849 F.2d at 467-68.

any actions that are inconsistent with the right to arbitrate. Instead, plaintiff alleges only inaction on the part of defendants. Second, the Court finds that the "litigation machinery" has not been substantially invoked. Defendants first notified plaintiff of their intent to enforce the arbitration agreement on June 9, 2017; at that time, plaintiff had not yet initiated, let alone been "well into preparation of," the lawsuit. Third, defendants filed their motions to compel arbitration and dismiss or stay the litigation on December 17, 2018–just over a month after plaintiff filed her lawsuit;[7] therefore, defendants did not wait until close to the trial date to seek to enforce arbitration. To the contrary, defendants moved fairly quickly upon plaintiff's filing of the complaint. Similarly, despite plaintiff's arguments, defendants did not delay for a long period before requesting a stay. Fourth, defendants have not filed a counterclaim in this action. Fifth, important intervening steps have not taken place; rather, other than the filing of the complaint, the only important event to take place is defendants' filing of the motions to compel arbitration and to stay or dismiss plaintiff's claims. Finally, although plaintiff generally alleges prejudice, she fails to specify or explain how defendants' alleged delay prejudiced her in any way. Moreover, because plaintiff filed this lawsuit after defendants requested that she submit her claims to arbitration pursuant to the arbitration agreement, and because defendants moved to compel arbitration just over a month after plaintiff initiated this lawsuit, the Court finds that plaintiff was not affected, misled, or prejudiced by any alleged delay. Therefore, the Court finds that all of the factors weigh against a finding that defendants waived their

---

[7] Plaintiff seems to suggest that, in order to avoid waiver of the right to demand arbitration, defendants were required to petition the Court for an order compelling arbitration before plaintiff even filed her complaint. Such a requirement would be an absurdity, as it would require defendants to seek to initiate arbitration against themselves (and to do so without being absolutely certain that plaintiff actually planned to follow through on her threat to seek recovery).

right to demand arbitration. Plaintiff does not identify any additional relevant factors for the Court to consider in its waiver analysis. Thus, the Court finds that plaintiff has failed to satisfy its "heavy burden of proof" in asserting a waiver of arbitration. Id. at 466.

Accordingly, the Court finds that defendants' motion to compel arbitration should be granted.

**III.**

Having determined that the motion to compel arbitration should be granted, the Court turns to defendants' motion to dismiss plaintiff's claims, or, in the alternative, to stay plaintiff's claims pending arbitration. Section 3 of the FAA states that, upon determining that the issue involved in the suit is referable to arbitration under an arbitration agreement, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3. Therefore, the proper course is for the district court to stay, rather than dismiss, the action pending arbitration. Adair Bus Sales, Inc. v. Blue Bird. Corp., 25 F.3d 953, 955 (10th Cir. 1994). Accordingly, the Court finds that the motion to dismiss plaintiff's claims should be denied, and the motion to stay plaintiff's claims should be granted.

**IT IS THEREFORE ORDERED** that defendants' motions to compel arbitration, and to dismiss or stay plaintiff's claims (Dkt. ## 11, 12) are **granted in part** and **denied in part**. The motions to compel arbitration and to stay plaintiff's claims are granted; the motion to dismiss plaintiff's claims is denied.

**IT IS FURTHER ORDERED** that, pursuant to LCvR 41.1, the Court Clerk is directed to **administratively close** this case pending either an order of the Court reopening the action, or until this case is dismissed with prejudice by stipulation of the parties.

**IT IS FURTHER ORDERED** that the parties shall file a notice in this Court within 15 days of the completion of arbitration.

**DATED** this 31st day of January, 2019.

*[signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE